



Richard G. Menaker (RM-4716)
Paul M. Hellegers (PH-1073)
MENAKER & HERRMANN LLP
10 East 40th Street
New York, New York 10016-0301
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X
                                                  :
                                                  :
GWI INVESTMENT MANAGEMENT LTD.,                   :    Civil Action No.:
                                                  :
                              Plaintiff,          :
                                                  :    **COMPLAINT**
            -against-                             :
                                                  :
HANA FINANCIAL INC.,                              :
                                                  :
                              Defendant.          :
                                                  :
                                                  :
————————————————————————X

Plaintiff GWI Investment Management Ltd. ("GWI"), by its attorneys Menaker & Herrmann LLP, for its complaint against Hana Financial Inc. ("Hana"), alleges as follows:

### PARTIES

1.    Plaintiff GWI is a corporation organized and existing under the laws of the Cayman Islands, with its principal offices in Sao Paolo, Brazil. GWI provides asset management services for institutional and individual clients.

2.    Defendant Hana is a corporation organized and existing under the laws of the State of California, with its principal offices in Los Angeles, California. Hana is a factor of commercial accounts receivable.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 because it includes claims under Section 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated under the Securities Exchange Act. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because it involves a dispute between a citizen of one of the states of the United States and a citizen of a foreign country, and the matter in controversy exceeds the sum of $75,000, exclusive of fees and costs.

4.     This Court may assert personal jurisdiction over the defendant in this action because (1) Hana is licensed to do business in the State of New York, (2) it transacts business, and the agreements at issue in this action were partially negotiated in New York, and (3) in said agreements, Hana agreed to submit to the jurisdiction of any federal court sitting in the City of New York in any suit arising out of or relating to said agreements.

5.     Venue is properly lodged in this judicial district under 28 U.S.C. § 1391 and 15 U.S.C.A. § 78aa because defendant is a corporation and deemed to reside here as a result of being subject to personal jurisdiction in this judicial district at the time the action is commenced, and because a substantial part of the events and omissions giving rise to GWI's claims occurred within this judicial district.

## FACTUAL BACKGROUND

6.     GWI, a closely-held corporation, is the largest financial services entity in Brazil owned and controlled by individuals of Korean extraction. In the spring

of 2006, senior management of GWI, led by its President Mu Hak You ("Mr. You"), entered into discussions to acquire a substantial equity position in Hana, based in the United States, which was also controlled by individuals of Korean extraction.

7.      In June 2006, Hana's Chief Executive Officer and largest shareholder, Sunnie Kim ("Ms. Kim"), provided GWI with financial statements for Hana through May 31, 2006. Those statements purported to provide an accurate and current account of the financial condition of Hana and thereby allow GWI to determine the book value of the company and know the extent to which Hana had taken reserves for potentially uncollectible debt accounts.

8.      Hana subsequently provided updated financial statements showing the company's financial condition as of June 30, 2006, July 31, 2006, and August 31, 2006, shortly after such statements were said to have become available. (The Hana financial statements as of May 31 through August 31, 2006, are hereinafter referred to as the "relied-on financial statements.")

9.      At the time they provided each of the relied-on financial statements to GWI, Hana's management knew that GWI would be relying on those statements to assess whether to proceed with an acquisition of shares of Hana's common stock and compute how much to pay for those shares.

10.     Based on its management's review of the relied-on financial statements and on oral statements made by Ms. Kim and other shareholders and managers at Hana during June through September 2006, GWI decided to make a series of purchases of Hana's common stock. This process began in July 2006 with the purchase of common stock from four individual Hana shareholders.  It continued in August 2006 with a

purchase of a block of common stock directly from Hana. And the process was completed in October 2006 with purchases from four other individual Hana shareholders. The purchases involved payments of a premium, ranging from 31.81 to 50 percent, over book value as computed from specified financial statements.

11.     The specific purchases are itemized in Exhibit A hereto. Each such purchase was made pursuant to a stock purchase agreement, as indicated in the Exhibit, which was signed by both the selling shareholder, by Ms. Kim on behalf of Hana, and by Mr. You on behalf of GWI.

12.     Each stock purchase agreement referred to in Exhibit A contains an indemnification clause by which Hana certified the book value per share as true and correct and undertook to indemnify GWI as follows: "In the event of future amendments to the Company's [specified monthly] 2006 financial statements that result[] in a decrease in book value per share, the Company [i.e., Hana] will indemnify the Purchaser [i.e., GWI] for the difference in the amount paid per share and the amended book value. The value paid as indemnification will be accrued using the LIBOR rate."

13.     As of the end of October 2006, GWI had acquired 371,421 shares of the common stock of Hana for a total purchase price of $5,809,117.05, making GWI the largest shareholder of Hana. These purchases were made in reliance upon the book values of Hana as reflected in the financial statements of the company as of May 31, June 30, and August 31, 2006, and reflected a substantial premium over such values as shown in Exhibit A.

14.     In 2007, after Hana's financial statement for the fiscal year ending December 31, 2006, was issued, GWI became aware that the May 31, June 30, and

August 31, 2006 financial statements did not accurately reflect Hana's actual financial condition for the periods covered by those statements. Specifically, the statements did not properly reflect the reserves required to be taken for credit losses and thereby inflated Hana's book value.

15. Hana's internal calculation of the reserve for credit losses for May 2006 showed a "Required Reserve Total" of $2,402,138, a "Book Reserve Balance" of $1,854,469 (the amount actually shown on the financial statement provided to GWI) and an "Over (Under) Reserve" of "(547,669)" (the difference between the required reserve and the reserve reflected on the financial statement); the corresponding figures for June 2006 were $2,465,698, $2,044,598 and (421,100); for August 2006 they were $3,137,206, $1,883,720 and (1,253,485).

16. Moreover, the expressly stated under-reserve figures understated the amounts by which Hana was actually under-reserving for credit losses on its financial statements. The calculations of required reserves described above were based in part on more detailed schedules of "classified" (i.e., at-risk) assets, which divided such accounts into four categories, for which reserves of 10%, 25%, 50% and 100% were respectively specified. The ten percent reserve category was not even included in calculating the required reserves from which the under-reserves in turn were calculated. The ten percent category totaled $281,050 for May 2006, $257,231 for June 2006, and $169,415 for August 2006. Adding these figures to the under-reserves for those months would increase them to $(828,719), $(678,231) and $(1,422,900), respectively.

16. The schedules of classified assets also failed to provide for a 100% reserve for certain accounts of a customer referred to as "The Turk Group."

Notwithstanding Hana's recognition throughout the relevant period of the unlikelihood of collection of the debt, the schedule of classified assets placed Turk Group Account ID 1390 in the fifty percent reserve category in August 2006 and in the twenty-five percent category before then.

17.     According to Hana's internal operational records, however, by July 2005, the outstanding loan balance for Turk Group Account ID 1390 already exceeded the factored accounts receivables that collateralized this loan by $355,551.  This negative credit balance thereafter grew to $1,367,793 (34 % of the loan balance) by January 2006, to $2,329,084 (79 % of the loan balance) by May 2006, and to $2,952,816 (100 % of the loan balance, according to the operational records) by July 2006.  On information and belief, based on Hana's failure to adequately explain its classification of the Turk Group accounts, Turk Group Account ID 6340, as to which GWI lacks the internal operational records, also should have been fully reserved.

18.     In addition, the relied-on financial statements did not provide for a 100 percent reserve for the debtor referred to as "Color Master," although on information and belief this debt account should have been fully reserved for at 100 percent. In fact, the debt account for "Color Master" was not even reflected as a classified asset.

19.     Upon information and belief, Hana decided to write off the total debt balance of "Color Master" in September 2006 despite having not carried it as a classified asset or provided an appropriate prior reserve for it.

20.     As a result of the foregoing, Hana's May 31, 2006 financial statement understated the requisite reserve by the sum of $3,810,085, its June 30, 2006 financial statement understated the requisite reserve by the sum of $3,659,697, and its

August 31, 2006 financial statement understated the requisite reserve by the sum of $3,197,123. The computation of these sums is set forth in Exhibit B to this complaint.

21.    Hana's understatement of reserve in the relied-on financial statements resulted in an overstatement of book value in each of those statements. There should have been a decrease in book value per share from $10.54 to $9.46 as of May 31, 2006, from $10.70 to $9.66 as of June 30, 2006, and from $11.38 to $10.60 as of August 31, 2006. A tabulation showing the revised book value is set forth in Exhibit C to this complaint, while the book value as inaccurately represented by Hana is shown in Exhibit A.

22.    The ultimate effect of the overstatement of book value described in the preceding paragraph was to cause GWI to overpay for the common stock under each of the stock purchase agreements. The total overpayment amounts to $564,631, which is the sum of the overpayments shown in Exhibit C to this complaint. GWI is also entitled to payment of interest at the LIBOR rate from the date of each overpayment.

23.    GWI has made demand upon Hana, both orally and in writing, to honor its covenant to indemnify GWI for its overpayments, but Hana has disclaimed any duty to do so and has refused to make payment.

### COUNT I
### (Breach of Contract)

24.    GWI repeats and realleges the foregoing paragraphs as if set forth fully herein.

25.    Hana covenanted in each of the stock purchase agreements to indemnify GWI in the event of future amendments to Hana's May 31, June 30 and

August 31, 2006 financial statements which resulted in a decrease in book value per share by paying GWI the difference between the amount paid per share and the amount that should have been paid per the amended book value.

26.    The understatement of reserves described above constitutes both a necessary and sufficient basis for the amendment of each of the relevant financial statements, thereby triggering the indemnification provision of each of the stock purchase agreements.

27.    GWI has given notice to Hana of the inaccurate valuation as aforesaid and has made demand for payment under the terms of each stock purchase agreement, but Hana has failed to honor its obligations thereunder.

28.    Accordingly, Hana is in breach of each of the stock purchase agreements and GWI has suffered injury thereby and is entitled to damages in an amount of not less than $564,631, together with prejudgment interest, in accordance with the relevant contractual terms.

## COUNT II
### (Fraudulent Misrepresentation)

29.    GWI repeats and realleges paragraphs 1 through 23 above as if set forth fully herein.

30.    Hana's May 31, June 30, and August 31, 2006 financial statements presented to GWI did not accurately represent the reserve that should have been carried for possible debt losses, and Hana's other statements and certification as to the truth and correctness of the book values reflected in the relied-on financial statements were false and misleading.

31.    At the time the relied-on financial statements and other inaccurate information was provided, Hana's management and directors were aware that such statements and information were inaccurate and intended that GWI rely thereon.

32.    Upon information and belief, Hana management masked the inaccuracies at issue through irregular bookkeeping procedures under which its financial statements under-stated the required reserves for credit losses as internally calculated, and even Hana's internal calculation of required reserves failed to include accounts that it recognized to be significantly at risk.

33.    GWI made its purchases of Hana's stock in reliance upon Hana's representations as aforesaid and has been damaged by overpaying in the sum of at least $564,631 plus loss of the time value of those funds.

## COUNT III
### (Securities Fraud)

34.    GWI repeats and realleges paragraphs 1 through 23 above as if set forth fully herein.

35.    Defendant violated Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated under the Securities Exchange Act in that, in connection with the sales of its shares and plaintiff's purchases thereof, it made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, with the intent to deceive plaintiff into paying inflated prices for said securities.

36.     These untrue statements consisted of inaccurate figures for reserves for credit losses (and resulting figures for finance receivables, total current assets, total assets, and total equity) contained in financial statements for May, June and August 2006 that Hana transmitted to GWI for the express purpose of using the figures contained therein to compute the prices that GWI was to pay for the shares (thereby implying that such figures accurately reflected the value of the shares).

37.     The figures for reserves for credit losses were inaccurate because they did not accurately reflect Hana's own internal evaluation of the reserves that were actually required, as shown in particular by the differing figures for required reserves and book reserves, and the resulting figures for under-reserves, set forth in Hana's internal calculations of reserves for credit losses, and the complete omission from the calculations of required reserves of the ten percent reserve category shown in Hana's internal schedules of classified assets.

38.     The figures were also inaccurate because the inclusion of the Turk Group accounts in the twenty-five percent reserve category as late as July 2006, and its inclusion in the fifty percent category thereafter, failed to reflect the under-collaterized, or completely uncollateralized state of at least the larger of these two accounts (representing over 80 percent of Hana's loans to this debtor), and its year-long run of negative credit balances, as shown in Hana's internal operational records.

39.     Upon information and belief, they were also inaccurate because Hana failed to list the Color Master account as a classified asset up until the month it was written off.

40.    The discrepancies between the reserve for credit loss figures in the financial statements provided to GWI and expressly referred to in the contracts, on the one hand, and Hana's own internal calculations of under-reserves, classified assets, and The Turk Group's negative credit balances, on the other hand, give rise to a strong inference that Hana knew that the figures in the financial statements were inaccurate and intentionally deceived GWI as to the value of its assets in order to induce GWI to pay more for the shares.

41.    Plaintiff reasonably relied on the accuracy of defendant's representations in the financial statements that were transmitted to it and expressly referred to in the contracts in agreeing to purchase the shares at the inflated prices established in the contracts.

42.    Defendant's misrepresentations induced plaintiff to enter into the contracts to purchase the shares at those inflated prices.  Plaintiff would not have purchased the shares at the prices it paid, or at all, if it had been aware that the prices had been falsely inflated by defendant's misleading statements.

36.    Defendant used instrumentalities of interstate commerce in inducing plaintiff to enter into the contracts.  Most of the negotiations for the contracts took place through telephone conversations between Ms. Kim and Mr. You, and the contracts were transmitted by telefacsimile and the United States mails.

37.    Plaintiff has been damaged in the amount of the differences between the prices it paid for the shares and the prices as they should have been calculated under the formulas stated in the contracts using accurate figures for book value, which differences total at least $564,631.

**WHEREFORE,** plaintiff demands judgment against defendant in the amount of not less than $564,631, together with interest, costs, disbursements and the legal expenses of this action.

Dated: New York, New York
      August 28, 2008

MENAKER & HERRMANN LLP

By: _____
    Richard G. Menaker (RM-4716)

Attorneys for Plaintiff
10 East 40th Street
New York, New York 10016-0301
(212) 545-1900

Exhibit A

Stock Purchase Agreements

| Seller | Date | Financial Statement | # of Shares | Book Value | Price Paid | Total Purchase Price |
|--------|------|---------------------|-------------|------------|------------|----------------------|
| Kimo Chung | 07/07/06 | 5/31/06 | 20,000 | 10.54 | 14.76 | 295,200.00 |
| Su Bok Cho | 07/07/06 | 5/31/06 | 16,000 | 10.54 | 14.76 | 236,160.00 |
| Hotel Stanford LLC | 07/07/06 | 5/31/06 | 32,000 | 10.54 | 14.76 | 472,320.00 |
| Debora Shin | 07/07/06 | 5/31/06 | 34,000 | 10.54 | 14.76 | 501,840.00 |
| Hana Financial | 08/21/06 | 6/30/06 | 249,221 | 10.70 | 16.05 | 3,999,997.05 |
| Soon Ik Lee | 10/03/06 | 8/31/06 | 1,200 | 11.38 | 15.00 | 18,000.00 |
| Kenny Wi | 10/03/06 | 8/31/06 | 5,000 | 11.38 | 15.00 | 75,000.00 |
| Soomee Kim | 10/04/06 | 8/31/06 | 4,000 | 11.38 | 15.00 | 60,000.00 |
| Charles Kim | 10/04/06 | 8/31/06 | 10,000 | 11.38 | 15.00 | 150,000.00 |

Exhibit B

Adjustments to Reserve

| Adjustment to Reserve | 5/31/06 | 6/30/06 | 8/31/06 |
|---|---|---|---|
| Under Reserve per Hana Calculation | 547,669 | 421,100 | 1,253,485 |
| Turk Group Account ID 1390 | 2,357,638 | 2,357,638 | 1,571,356 |
| Turk Group Account ID 6340 | 482,585 | 482,585 | 61,724 |
| Classified Risk Rating 6 (ten percent reserve category) | 281,050 | 257,231 | 169,415 |
| Color Master | 141,143 | 141,143 | 141,143 |
| Total Adjustment | 3,810,085 | 3,659,697 | 3,197,123 |

Exhibit C

Effect of Adjustments on Purchase Price

| | | | |
|---|---|---|---|
| Equity Per Financial Statement | 22,780,012 | 23,126,547 | 28,066,048 |
| Net Income Before Tax per Financial Statement (Year to Date) | 2,405,954 | 2,968,038 | 4,111,777 |
| Net Income After Tax per Financial Statement | 1,471,854 | 1,818,638 | 2,494,477 |
| Adjustment | (3,810,085) | (3,659,697) | (3,197,123) |
| Revised Net Income Before Tax | (1,404,131) | (691,659) | 1,166,333 |
| Revised Net Income After Tax | (858,984) | (423,157) | 559,585 |
| Revised Equity | 20,449,175 | 20,884,552 | 26,131,156 |
| Revised Value Per Share | 9.46 | 9.66 | 10.60 |
| Revised Price Per Share | 13.24 | 14.49 | 13.97 |
| Times Number of Shares Purchased | 1,350,480 | 3,611,212 | 282,194 |
| Actual Purchase Price | 1,505,520 | 3,999,997 | 303,000 |
| Over-payment | 155,040 | 388,785 | 20,806 |